

I N   T H E

# Court of Appeals of Indiana

In the Matter of the Estate of Robin L. Ropp, Deceased.

Kay L. Smith,

*Appellant-Petitioner*

v.

Jay T. Ropp,

*Appellee-Respondent*



FILED

Mar 27 2024, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 27, 2024

Court of Appeals Case No.
23A-EU-1168

Appeal from the Whitley Circuit Court

The Honorable Matthew J. Rentschler, Judge

Trial Court Cause No.
92C01-1903-EU-19

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

Kay Smith ("Smith"), as the Co-Personal Representative of the Estate of Robin L. Ropp, Deceased ("Estate"), appeals the trial court's "Final Order Approving Accounting, Personal Representatives' and Attorneys' Fees and Closing Estate." (App. Vol. II at 16) (original formatting omitted).[1] Smith argues the trial court erred when it determined she did not have standing to challenge the final accounting of the Estate. We affirm.

## Facts and Procedural History

Robin L. Ropp died testate on November 5, 2018. Jay Ropp ("Jay") was Ropp's husband and Smith was her mother. In Robin's will, Jay, Smith, and Ronda McClure[2] were named Co-Personal Representatives. Jay and Robin's children, T.R. and S.R., (collectively, "Children") were the beneficiaries of Robin's will.

Under Robin's will, Jay was to receive sole ownership of three properties owned by "Bridge-Ways, LLC[.]" (*Id*. at 25.) Robin's will bequeathed all other assets to Children, who were approximately thirteen years old at the time of Robin's death. The assets bequeathed to Children were to be put in a trust and used "to provide for the support, maintenance, medical, optical, dental, and education expenses" of Children "until the youngest of them attains the age of

---

[1] Both Smith and Ropp filed an Appendix, but all citations herein are to the Appendix filed by the Appellant, Smith.

[2] Ronda also served as Co-Personal Representative until she resigned the designation on March 18, 2021.

twenty-five (25) years." (*Id.* at 26.) After Children turned twenty-five years old, they were each entitled to half of the remaining trust funds.

[4] Robin's will was admitted to probate on June 14, 2019, and became a supervised Estate with Co-Personal Representatives as named in Robin's will. During the administration of the Estate, Jay performed many functions of the Estate such as determining assets and paying creditors, without Smith's assistance or input.[3] On April 27, 2021, Smith petitioned the trial court to ask that it require Jay to file an accounting of the Estate. On June 1, 2021, Smith petitioned the trial court to remove Jay as Co-Personal Representative of the Estate. In that petition, Smith argued Jay had refused to share information about the assets of the Estate with her, was unwilling to discuss with her "any decisions regarding the [E]state[,]" and he had "totally failed to act in accordance with his fiduciary duties [to] the [E]state." (*Id.* at 40.)

[5] On July 6, 2021, Jay filed an interim accounting of the Estate with the trial court. On July 7, 2021, the trial court held a hearing on Smith's two petitions. On August 9, 2021, the trial court issued its order denying Smith's request to remove Jay as Co-Personal Representative of the Estate. It further named Robin's father, Eric Smith, as the trustee of the trusts for the benefit of Children and ordered Jay to provide several documents regarding the Estate's assets to

---

[3] The extent to which McClure was involved in the administration of the Estate is unclear from the Record before us.

Eric. Finally, the trial court granted Smith's petition to require Jay to file an accounting of the Estate "as a 'final report'" by August 16, 2021. (*Id.* at 45.)

[6] On August 18, 2021, Jay filed a final report for the Estate. On September 8, 2021, Smith filed a renewed motion to remove Jay as Co-Personal Representative of the Estate and "for Order Requiring Production of Information and Money." (*Id.* at 63) (original formatting omitted). Therein, Smith argued Jay had not complied with the trial court's August 9 order as he had not provided the required documents to Eric as the trustee of the trusts for the benefit of Children and had not filed the Estate's final report by August 16, 2021. On September 21, 2021, the trial court issued its order finding Smith was mistaken regarding the filing of the final report, as Jay filed it on August 18, 2021. Further, the trial court concluded Jay "substantially, if imperfectly, abided by the prior order of this Court requiring transfer of trust assets." (*Id.* at 70.)

[7] On October 21, 2021, Jay filed a supplemental report to the Estate's final accounting (collectively, hereinafter "Estate Final Accounting"). On December 23, 2021, Smith filed her response to the Estate Final Accounting and alleged there were several Estate assets missing from the accounting. On December 23, 2021, Jay filed a motion to dismiss Smith's response to the Estate Final Accounting in which he asserted Smith lacked standing to challenge his accounting.

[8] On March 14, 2022, the trial court granted Jay's motion. It ruled Smith was not an "interested person" under Indiana Code section 29-1-1-3(a)(18) and thus could not contest the Estate Final Accounting. The trial court noted Smith may be entitled to personal representative fees and attorney costs, but most of her complaints regarding the Estate Final Accounting were attempts to second guess Jay's administration of the Estate at every turn. The trial court noted Children were the only parties that could be prejudiced by any errors, and they had not challenged any of the Estate Final Accounting.

[9] On April 12, 2022, Smith asked the trial court to certify its March 14 order for interlocutory appeal, and the trial court did so on April 29, 2022. We declined to accept jurisdiction over the matter on June 28, 2022. On July 12, 2022, Smith filed a motion for relief from judgment and argued the trial court erred when it granted Jay's motion to dismiss her response to the Estate Final Accounting. The trial court denied that motion on July 14, 2022.

[10] On March 7, 2023, Smith filed a petition requesting approval of personal representative fees and attorney's fees. The trial court held a hearing on the matter on April 5, 2023. During that hearing, Smith reasserted her challenges to the Estate Final Accounting. Consistent with its order of March 14, 2022, the trial court denied Smith the opportunity to object thereto and only allowed the parties to present evidence regarding the amount of personal representative and attorney's fees due to each Co-Personal Representative.

On April 25, 2023, the trial court issued its order on the proceedings. Therein, it concluded Smith did not have standing to object to the Estate Final Accounting. The trial court approved the Estate Final Accounting because no interested party had objected. Additionally, the trial court granted Smith's request for $24,421.73 in personal representative fees and $73,542.95 in attorney's fees, both of which were to be paid by the Estate. It further granted Jay $21,486.50 in personal representative fees and $35,240.00 in attorney's fees, both also to be paid by the Estate. The trial court closed the Estate.

## Discussion and Decision

Smith argues the trial court erred when it determined she did not have standing as a Co-Personal Representative to challenge the Estate Final Accounting. She makes two arguments regarding this issue – first, that she has standing by virtue of her position as a Co-Personal Representative, as she is required in that role to act as a fiduciary on behalf of the Estate; and second, that she is an "interested party" pursuant to Indiana Code section 29-1-1-3(18).

As we explained regarding standing in *Inlow v. Henderson, Daily, Withrow & DeVoe*,

> [i]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue. To put it another way, for a plaintiff to have standing his interest must be a present, substantial interest, as distinguished from a mere expectancy or future, contingent interest.

787 N.E.2d 385, 395 (Ind. Ct. App. 2003) (internal citations and quotation marks omitted), *reh'g denied*, *trans. denied*. Personal representatives have a "present and substantial interest in the estate's assets." *Matter of Guardianship of Lamey*, 87 N.E.3d 512, 522 (Ind. Ct. App. 2017). Therefore, as Smith was a Co-Personal Representative of the Estate, she had standing to challenge the distribution of the Estate's assets.

[14] However, Smith does not have standing as an interested person as defined by 29-1-1-3(18). That statute defines an interested persons as "heirs, devisees, spouses, creditors, or any others having a property right in or claim against the estate of a decedent being administered." *Id*. Smith does not fall into any of these categories. Thus, she does not have standing to challenge the Estate Final Accounting as an interested person.

[15] Despite the fact that Smith had standing as a Co-Personal Representative, the trial court did not err when it denied her objection to the Estate Final Accounting. Here, the trial court sua sponte made findings to support its decision to approve the Estate Final Accounting and close the Estate. Thus, the findings control our review and judgment only as to those issues specifically referenced in the findings. *Samples v. Wilson*, 12 N.E.3d 946, 949-50 (Ind. Ct. App. 2014). When the trial court does not make specific findings on an issue, we apply a general judgment standard, and we may affirm on any legal theory supported by the evidence adduced at trial. *Id*. at 950.

Over the five years the Estate has been pending for distribution, Smith has filed multiple motions that have unnecessarily prolonged the proceedings. For example, as noted in the facts, Smith twice filed for Jay to be removed as a Co-Personal Representative. In the first motion, she alleged she should be named the sole Personal Representative of the Estate because she and Jay could not get along. In her second motion to remove Jay as Co-Personal Representative, she asserted that Jay had not filed an accounting as required in a previous order of the trial court when, in fact, Jay had filed the required accounting almost a month before. Both of the motions to remove Jay as co-Personal Representative were denied.

In all motions filed before the trial court, Smith repeatedly complained that she should be given access to financial records regarding rental property, insurance proceeds, and other assets. At every turn, she has questioned Jay's accounting of the assets of the Estate, going so far as to allege he misrepresented and mismanaged Estate funds by paying for line items she did not approve, failing to provide documentation she requested, and failing to account for her Co-Personal Representative fees and attorney's fees in the Estate Final Accounting. In one filing, she asserted,

> a large sum of cash, in excess of $100,000 was observed in the marital residence that has not been accounted for and presumably come [sic] from rental properties and should have been an [Estate] asset or at least half. Also, [Smith] provided Robin with $125,000 in cash that was sewn into Robin's purse to take with her to Europe for further medical treatments for cancer and to be administered other medication not available in the

United States. The trip never took place, the purse and cash have not been reported as an asset of the [Estate]. Additionally, there was $35,000 in a green gym bag showed to Eric by Jay, and also, Jay told Nicole Smith that he, Jay, found $50,000 in a paper bag under the bed.

(App. Vol. II at 82-3.) As the trial court stated in its March 14, 2022, order regarding Smith's objection to the Estate's Final Accounting,

the vast majority of [Smith's] claims focus on complaints about her desire to supervise and second-guess what Jay is doing. Ultimately if Jay is in fact improperly administering the [Estate], the only parties who might suffer prejudice would be Jay and Jay's children. Thus far, the children have lodged no complaints.

(*Id*. at 96.) The trial court ruled Smith was permitted to challenge only the amount of Co-Personal Representative and attorney's fees she was due.

[18] After the denial of her objection to the Estate Final Accounting, Smith then further prolonged the proceedings by requesting the matter be certified for interlocutory appeal. When her attempts to challenge the Estate Final Accounting via interlocutory appeal were unsuccessful, Smith filed a motion for relief from the trial court's March 18, 2022, order. The trial court denied that motion two days after it was filed.

[19] The matter then languished for another year. On March 7, 2023, Smith filed her motion requesting the approval of her Co-Personal Representative and attorney's fees. The trial court held a hearing on the matter on April 5, 2023, and Smith again tried to argue mismanagement of the Estate despite being told

multiple times by the trial court, even during that hearing, that she was not permitted to do so.

[20]  Without objection by the Estate, the trial court paid Smith $24,421.73 in personal representative fees and $73,542.95 in attorney's fees - almost $100,000 - which accounts for approximately 17% of the Estate's assets meant primarily for Children.  In contrast, the trial court granted $21,486.50 in personal representative fees and $35,240.00 in attorney's fees - a total $56,726.50 - to Jay, who did all the work to identify the assets of the Estate and distribute them based on Robin's wishes.  Had Smith not questioned essentially every decision and accounting Jay filed, his attorney's fees would likely have been considerably less, thus leaving more assets for distribution primarily to Children.

[21]  As we recently explained in *Sims v. Buttigieg*:

> "There is no right to engage in abusive litigation."  Moreover, "the state has a legitimate interest in the preservation of valuable judicial administrative resources," and "[e]very resource that courts devote to an abusive litigant is a resource denied to other legitimate cases with good-faith litigants."  In the interest of preserving these resources and apart from statutes or rules of court, "courts have inherent authority to impose reasonable restrictions on any abusive litigant."

194 N.E.3d 80, 82 (Ind. Ct. App. 2022) (internal citations omitted), *trans. denied, cert. denied* 144 S. Ct. 609 (2023).  Even though she was not a beneficiary under Robin's will, Smith depleted 1/6 of the Estate funds meant for her

grandchildren, who were approximately thirteen years old at the time of Robin's death in 2019, at the time the Estate was opened. When the trial court approved the Estate Final Accounting in 2023, Children were over eighteen years old. Per the provisions of Robin's will, the funds she bequeathed Children could have been used for things like medical expenses and educational expenses. Based on the Estate Final Accounting, the only funds used for Children's benefit were payments toward their cell phone bills.

[22] Smith's vexatious and repetitive challenges of Jay's handling of estate matters has deprived her grandchildren of the inheritance that their mother, Robin, wished to be used to their benefit. The trial court did not err when it refused to entertain Smith's repetitive objections to the Estate Final Accounting. Despite the fact she had standing as a Co-Personal Representative to challenge the Estate Final Accounting, Smith engaged in behavior that was, at best, vexatious. Therefore, the trial court did not err when it denied her objection to the Estate Final Accounting. *See*, *e.g.*, *id.* (courts have authority to impose restrictions on any litigant who persists with meritless claims).

## Conclusion

[23] While Smith had standing to object to the Estate Final Accounting, the trial court did not err when it denied her repeated requests to do so because she unnecessarily prolonged the proceedings, which resulted in significant depletion of the Estate's assets meant for Children. Accordingly, we affirm.

[24] Affirmed.

Altice, C.J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Jared P. Baker
Lindsay H. Lepley
Burt, Blee, Dixon, Sutton, & Bloom, LLP
Fort Wayne, Indiana


ATTORNEY FOR APPELLEE

Nathan S.J. Williams
Shambaugh Kast Beck & Williams, LLP
Fort Wayne, Indiana